UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRIAN E. GRAVES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00287-WTL-MJD |
| | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS**

Petitioner Brian Graves was convicted of escape, resisting law enforcement, and classified as a habitual offender in an Indiana state court. Mr. Graves now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that both his trial and appellate counsel provided ineffective assistance, and he raises three other constitutional claims. The Indiana Court of Appeals reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in denying Mr. Graves's ineffective-assistance-of-counsel claims, and his remaining claims are procedurally defaulted. Therefore, Mr. Graves's petition for a writ of habeas corpus is **denied** and a certificate of appealability will not issue.

**I.
Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the facts underlying Mr. Graves's convictions as follows:

[O]n the cold and snowy evening of February 7, 2010 Indiana State Police Trooper

Christopher Howell began to patrol Interstate 74 looking for drivers who might be stranded due to the inclement weather. The trooper observed Graves's truck parked in the emergency pull-off lane on the interstate. Graves was standing at the front of the vehicle. When Trooper Howell stopped to investigate, he asked Graves what he was doing. Graves replied that he was scraping ice from his windshield. Trooper Howell, who observed that there was nothing in Graves's hands, noted that Graves's words were slurred and he was unsteady on his feet. At this point, Howell was standing in front of his police cruiser, which in turn was stopped behind Graves's truck. He asked Graves to come to him. Graves initially refused and told the trooper he was going to "take off". Transcript at 34. In response, Trooper Howell issued a "loud command" to Graves to walk to the trooper. *Id.* This time, Graves complied. The trooper patted down Graves and asked where he had been and where he was going. When Graves responded, Trooper Howell detected the odor of alcohol on his breath. He asked if Graves had been drinking and Graves said he had not. Trooper Howell asked for Graves's identification and registration and was informed that they were in the truck. He escorted Graves to the vehicle and watched as Graves retrieved his wallet and began looking through its contents. He noted that Graves had an Indiana identification card, which signified to the trooper either that Graves did not have a driver's license, or that his license was suspended. He asked Graves about the status of his license and Graves responded that it had been suspended for nonpayment of parking tickets. Graves was not able to produce any of the other requested documentation. At that point, because of the weather and conditions, Trooper Howell asked Graves to sit in the front passenger seat of his police cruiser while he verified Graves's information.

After the two were seated inside the cruiser, Trooper Howell began running Graves's information on a laptop computer located between the two of them such that both Howell and Graves could see the information displayed on the screen. When the laptop began to emit audible alert tones and display Graves's information, Graves was looking at the screen and reading the information along with Trooper Howell. Among the information on the screen was an indication that Graves was wanted on four open warrants. After a few seconds, Graves "turned his head and said sorry, I gotta go." *Id.* at 39. He then opened the door and, according to Howell, "out he went." *Id.* Trooper Howell at first just sat there, "dumbfounded." *Id.* at 40. He saw Graves start toward his truck, and then the trooper exited his car and ran to intercept Graves. During the ensuing scuffle, the trooper repeatedly commanded Graves to "stop resisting" and told him, "You need to stop." *Id.* at 74. He grabbed Graves while they were between the vehicles, but Graves slipped from his grasp and continued to the front passenger side of his truck. Trooper Howell decided to run around the driver's side of the truck and intercept Graves from that direction. He caught Graves near the front of the vehicle. Graves pushed Howell, who fell backward and hit his head and was stunned for a moment. By the time Howell recovered, Graves had climbed into the driver's seat of the truck, but the door was still open when Howell got to him and began pulling on Graves, attempting to extricate him from the truck. He continued pulling Graves by the coat and ordering him to get out of the truck and to quit resisting. At some point, Graves managed to

get his truck into gear, stepped on the gas, and began driving away. When he did, the forward motion caused the door to shut on Trooper Howell's left hand, injuring one of his fingers badly enough that it later required stitches. Trooper Howell hung on "for a little bit" but soon let go. *Id.* at 42. He called the State Police Post and gave them Graves's description and a description of his truck. That description was relayed to law enforcement officials in the area.

Approximately ten minutes later, Deputy Joseph Mohr of the Shelby County Sheriff's Department observed Graves driving on I–74. After ascertaining that the truck matched the description of the subject vehicle, Deputy Mohr initiated a traffic stop. Graves sped away and threw several items out of the window before he eventually stopped after a chase. He was ultimately convicted of escape as a class B felony, resisting law enforcement as a class D felony, [which were merged at sentencing], and found to be a habitual offender.

*Graves v. State*, 978 N.E.2d 759, 2012 WL 5458116, *1-2 (Ind. Ct. App. 2012) ("*Graves I*"). The Indiana Court of Appeals affirmed his convictions.

Mr. Graves then pursued state post-conviction relief. The state post-conviction court vacated his adjudication as a habitual offender, but left intact his escape conviction. *See Graves v. State*, 94 N.E.3d 357, 2017 WL 4343051, *1 n.1 (Ind. Ct. App. 2017) ("*Graves II*"). The Indiana Court of Appeals affirmed the denial of relief on Mr. Graves's escape conviction. *See id.* After the Indiana Supreme Court denied transfer, Mr. Graves filed the instant petition for a writ of habeas corpus on June 22, 2018.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation

marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded

jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.
### Discussion

Mr. Graves raises five claims in his habeas petition: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) denial of due process; (4) denial of a speedy trial; and (5) denial of equal protection. Underlying of all Mr. Graves's claims is his contention that his escape prosecution in Decatur County was an unauthorized successive prosecution under Indiana Code § 35-41-4-4(a) because he had already been prosecuted for resisting law enforcement in Shelby County. He argues that both trial and appellate counsel provided ineffective assistance for failing to argue and establish that his escape conviction was barred under Indiana law.

Respondents argue that Mr. Graves's ineffective-assistance claims lack merit and his remaining three claims are procedurally defaulted. The Court will address the issue of procedural default before turning to the remaining claims.

## A. Procedural Default

Respondent argues that Mr. Graves procedurally defaulted his due process, speedy trial, and equal protection claims by not including them in his petition to transfer to the Indiana Supreme Court. "To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citation and quotation marks omitted); *see* 28 U.S.C. § 2254(b)(1)(A). "Fair presentment requires . . . the petitioner [to] raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory," such as the Indiana Supreme Court. *King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016) (citation and quotation marks omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.* (citation and quotation marks omitted).

Although Mr. Graves presented these three claims to the Indiana Court of Appeals, *see* Dkt. 8-10, he at best gives these claims a cursory mention in his petition to transfer. Specifically, he mentions these claims only in the final paragraph of the argument section, stating that he "identified equal protection, fast and speedy trial, and due process violations" as the prejudice from the delay in charging him with escape. Dkt. 8-14 at 9. He then states, "These claims are the basis for Fifth, Sixth, and Fourteenth Amendment violations that occurred as a consequence of the filing delay." *Id.* Although in a vacuum these sentences could at least arguably be construed as an

attempt to independently raise these claims, when read in the context of his petition to transfer, the Court concludes that they were not fairly presented to the Indiana Supreme Court.

Mr. Graves clearly states that the only question presented in his petition to transfer is "[d]id the Court of Appeals err in the decision that neither trial nor appellate counsel were ineffective for failure to raise a single scheme or plan argument?" *Id.* at 2. He then summarized the Indiana Court of Appeals' decision, noting that it denied his ineffective-assistance-of-counsel claims on the merits while denying his other constitutional claims as procedurally barred. *Id.* at 4-5. He concluded his summary as follows: "Graves now seeks transfer to determine if the Court of Appeals has properly interpreted the law as it [pertains] to an ineffective assistance of counsel claim." *Id.* at 5. Then, his argument section focuses almost exclusively on his ineffective-assistance-of-counsel claims. The cursory mention of his other constitutional claims comes only at the end of the argument section, and then only to establish prejudice from his counsel's deficient performance.

In sum, Mr. Graves's petition to transfer explicitly stated he was only presenting his ineffective-assistance-of-counsel claims for review. Based on this alone, it is difficult to see how the petition to transfer could have alerted the Indiana Supreme Court that he was raising additional claims. Moreover, when Mr. Graves mentions the additional claims, he does so only as part of why he was prejudiced by counsel's deficient performance, not as stand-alone claims. Embedding these claims in his ineffective-assistance-of-counsel claims—especially when only presented in a cursory manner—is insufficient to alert the state court that he was raising additional claims. *Cf. McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (holding that a petitioner did not fairly present his suggestive identification claim because, among other reasons, he only raised it "amid

an argument about whether police had probable cause to arrest him"). Therefore, Mr. Graves did not fairly present these claims to the Indiana Supreme Court as required.

"A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard[.]" *Johnson*, 786 F.3d at 505. Mr. Graves does not argue that he can overcome his procedural default on either basis. Accordingly, his due process, equal protection, and speedy trial claims are procedurally defaulted.[1]

### B. Ineffective Assistance of Trial and Appellate Counsel

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland*, 466 U.S. at 687. For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673-74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). Additionally, when analyzing appellate counsel's performance, the Court must determine whether

---

[1] As Respondent points out, these claims are procedurally defaulted for the additional reason that the Indiana Court of Appeals rejected them as barred because they were known and available during direct appeal but not presented. *See Graves II*, 2017 WL 4343051, at *1 n.2. This represents another form of procedural default, occurring when the state court decides a federal claim on an independent and adequate state-law basis. *See Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (citation and quotation marks omitted)).

appellate counsel "abandoned a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim that he actually presented, his performance was deficient, unless his choice had a strategic justification." *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Laux*, 890 F.3d at 674 (quoting *Strickland*, 466 U.S. at 694).

The Indiana Court of Appeals rejected Mr. Graves's ineffective-assistance-of-trial-counsel claim on the ground that trial counsel pursued dismissal on the basis advanced by Mr. Graves here but the motion to dismiss was denied. Thus, trial counsel's performance could not have been deficient for not pursing this claim. *See Graves II*, 2017 WL 434051, at *3.

The Indiana Court of Appeals then rejected Mr. Graves's ineffective-assistance-of-appellate-counsel claim. It began its analysis by setting forth Indiana law governing the bar on successive prosecutions:

> Although trial counsel preserved the issue for appeal, appellate counsel did not present an issue regarding successive prosecution. . . .
>
> Specifically, Graves contends that his appellate counsel should have argued that his prosecution in Decatur County was a prohibited successive prosecution because the Escape offense was part of the "same scheme or plan" as the Shelby County Resisting Law Enforcement offense. Appellant's Brief at 18–19. We turn to consider whether this was a significant and obvious issue.
>
> Pursuant to Indiana Code Section 35–41–4–4(a), a prosecution is barred if all the following exist:
>
>> (1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.
>>
>> (2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.
>>
>> (3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution.

> The words "should have been charged" of subsection (a)(3) are to be read in conjunction with Indiana's joinder statute. *Williams v. State*, 762 N.E.2d 1216, 1219 (Ind. 2002). The joinder statute provides in relevant part:
>
>> A defendant who has been tried for one (1) offense may thereafter move to dismiss an indictment or information for an offense which could have been joined for trial with the prior offenses under section 9 of this chapter. The motion to dismiss shall be made prior to the second trial, and shall be granted if the prosecution is barred by reason of the former prosecution.
>
> Ind. Code § 35–34–1–10(c).
>
> In turn, section 9 provides in relevant part:
>
>> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count when the offenses ... (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.
>
> Where two or more charges are based on the same conduct or on a series of acts constituting parts of a single scheme or plan, they should be joined for trial and when the State brings multiple prosecutions for a series of acts constituting parts of a single criminal transaction, it does so at its own peril. *Williams*, 762 N.E.2d at 1219. To determine whether contemporaneous crimes are part of a single scheme or plan, we examine "whether they are connected by a distinctive nature, have a common modus operandi, and a common motive." *Id.* at 1220 (quoting *Henderson v. State*, 647 N.E.2d 7, 10 (Ind. Ct. App. 1995)).

*Graves II*, 2017 WL 434051, at *3-4. After setting forth these principles of state law, the Indiana Court of Appeals compared two state court precedents applying them. It ultimately concluded that the facts of Mr. Graves's case were more analogous to the case where two prosecutions were not found to violate Indiana's successive prosecution law. *Id.* at *5. Counsel's performance, therefore, was not deficient for failing to raise a claim that would not have been successful.

Mr. Graves argues that the Indiana Court of Appeals wrongly applied these state-court precedents. But this Court cannot review the Indiana Court of Appeals' resolution of an issue of state law. *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (citation and

quotation marks omitted)); *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). Instead, this Court must accept the Indiana Court of Appeals' determination that the Decatur County escape prosecution did not violate state law. Given this, the Indiana Court of Appeals reasonably applied *Strickland* in rejecting Mr. Graves's contention that his trial and appellate counsel should have pursued this issue. Counsel cannot be ineffective for failing to pursue an argument that lacked merit. *See Jones v. Brown*, 756 F.3d 1000, 1009 (7th Cir. 2014).

Accordingly, Mr. Graves is not entitled to habeas relief on either of his ineffective-assistance-of-counsel claims.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Jurists of reason could not disagree that Mr. Graves's claims

are procedurally defaulted or otherwise without merit. Therefore, a certificate of appealability is **denied**.

## V.
## Conclusion

Mr. Graves's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 6/18/2019

*William T. Lawrence*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

BRIAN E. GRAVES
850494
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov